NO. 26-7637

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE META PIXEL
HEALTHCARE LITIGATION

On Petition for Permission to Appeal from the
United States District Court for the Northern District of California
(Case No. 3:22-cv-03580) (District Judge William H. Orrick)

# BRIEF OF WASHINGTON LEGAL FOUNDATION AS AMICUS CURIAE SUPPORTING PETITIONER AND LEAVE TO APPEAL UNDER RULE 23(f)

Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
candrews@wlf.org

*Counsel for Amicus Curiae*
*Washington Legal Foundation*

November 18, 2026

## RULE 26.1 DISCLOSURE STATEMENT

Washington Legal Foundation has no parent company, issues no stock, and no publicly held company owns a ten percent or greater interest in it.

# TABLE OF CONTENTS

**Page**


RULE 26.1 DISCLOSURE STATEMENT ........ i

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTEREST OF AMICUS CURIAE ........ 1

INTRODUCTION & SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

I. THE DECISION BELOW CERTIFIES FIRST AND DEFERS RULE 23'S MANDATORY FINDINGS ........ 3

A. A court may not defer the predominance inquiry itself ........ 4

B. The district court set Meta's evidence aside and left the sorting for later ........ 7

II. INTERLOCUTORY REVIEW IS MOST LIKELY THE ONLY REVIEW THIS ORDER WILL RECEIVE ........ 10

CONCLUSION ........ 13

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .................... 4

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .................... 11

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) .................... 6

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .................... 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .................... 3

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) .................... 8

*Ingraham v. Cap. One Fin. Corp.*,
No. 24-cv-05985-TLT, 2026 WL 1759155
(N.D. Cal. June 16, 2026) .................... 5

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017) .................... 10

*Nolen v. PeopleConnect, Inc.*,
No. 24-3894, 2026 WL 2871735
(9th Cir. Sept. 24, 2026) .................... 2, 4, 7, 8, 9, 11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) .................... 3

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................... 1

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .................... 3, 4, 5

## TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) .......... 7

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 1, 3

**Statutes:**

Cal. Penal Code § 637.2(a)(1) .......... 2–3, 9

**Rules:**

Fed. R. Civ. P. 23 .......... 2, 3, 6, 9, 11, 13

Fed. R. Civ. P. 23(b)(3) .......... 3, 6

Fed. R. Civ. P. 23(c)(1)(C) .......... 9

Fed. R. Civ. P. 23(c)(5) .......... 5

Fed. R. Civ. P. 23(f) .......... 10

Fed. R. Civ. P. 23 advisory committee's note to
1998 amendment .......... 10

Fed. R. Civ. P. 23 advisory committee's note to
2003 amendment .......... 9

## INTEREST OF AMICUS CURIAE*

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It often appears as an amicus curiae to oppose improperly certified classes. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

## INTRODUCTION & SUMMARY OF ARGUMENT

"Here we are." Order at 19 (ECF No. 1425). With those words the district court recalled what it had told the parties: that the shape of this case "would be determined on class certification." *Id.* It then certified four nationwide classes of Facebook users whose health information was allegedly sent to Meta from thousands of healthcare providers' websites and apps—and spent the rest of the order explaining that the shape of the case would, in fact, be determined later.

Consider everything the court left open. Which listed entities are covered by the Health Insurance Portability and Accountability Act

* No party's counsel authored any part of this brief. No one, apart from WLF and its counsel, contributed money intended to fund the brief's preparation or submission.

(HIPAA) or California's Confidentiality of Medical Information Act (CMIA) "will be briefed, I assume, at summary judgment." Order at 5. Whether listed providers even used Meta's tools "can be tested at summary judgment, at trial, or through other case management techniques." *Id.* at 7. On consent, the court "may have to review disclosures of specific websites or apps." *Id.* at 12 n.9. As for who belongs in the class, members "can likewise self-identify at the appropriate juncture, presumably following an aggregate damage or restitution award." *Id.* at 7. The court did not claim to know how any of this would be tried. "Plaintiffs will have to make choices on how to try this case . . . ." *Id.*

Rule 23 does not work that way. It demands that the district court answer crucial questions before certifying a class. Although this Court allows a trial court to leave for summary judgment a question the class will win or lose together, *Nolen v. PeopleConnect, Inc.*, No. 24-3894, 2026 WL 2871735, at *6–7 (9th Cir. Sept. 24, 2026), it does not let that court defer questions it concedes will come out differently member by member. Avoiding those questions here did not postpone the predominance inquiry. It skipped it.

The consequences of that error will not likely wait for summary judgment. At $5,000 in statutory damages per violation, Cal. Penal Code

§ 637.2(a)(1), no company can afford to litigate these classes to judgment. That exposure will set the price of settlement before a single deferred question is answered.

## ARGUMENT

### I. THE DECISION BELOW CERTIFIES FIRST AND DEFERS RULE 23'S MANDATORY FINDINGS.

A plaintiff seeking certification "must actually prove—not simply plead—that [the] proposed class satisfies each requirement of Rule 23." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014)). Predominance requires a finding, by a preponderance, that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *Olean*, 31 F.4th at 665.

A common question is one for which "the same evidence will suffice for each member." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). An individual question requires "evidence that varies from member to member." *Id.* The court must find which is which. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Here the court drew a line between "complexity" and "individualized questions," Order at 2, and

put everything that would have defeated certification on the complexity side.

### A. A court may not defer the predominance inquiry itself.

Some merits questions can wait for summary judgment. When "the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." *Tyson Foods*, 577 U.S. at 457 (citation omitted). This Court applied that rule in *Nolen* five weeks before the order below. The defendant there argued that the plaintiff's theory failed as a matter of state law. 2026 WL 2871735, at *7. The Court declined to decide the point at certification because, whichever way it came out, "the class is entirely cohesive: It will prevail or fail in unison." *Id.* (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)).

*Nolen* permits deferring a question with one answer. Here the court deferred questions with thousands. *See* Pet. 10 (5,642 websites and apps). Whether a listed entity is a covered provider is a question about that entity. Order at 4–5. Whether it used Meta's tools, on which pages, and for how long is a question about that entity. *Id.* at 6–7. Whether its disclosures

gave patients notice is a question the court "may have to" answer by reviewing "disclosures of specific websites or apps," then resolve "common to the clients of those Class Healthcare Providers." *Id.* at 12 n.9; *see id.* at 15 n.13.

The court described each provider's patients as a separate population of "hundreds, thousands, or tens of thousands." *Id.* at 12. A question that must be asked anew for each of thousands of populations, on each population's own evidence, is one that "varies from member to member." *Tyson Foods*, 577 U.S. at 453. The order itself anticipates "subclassed resolution." Order at 9. Subclasses are permitted, but each is "treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). If each provider is a subclass, there are thousands with no representatives and no findings. That is a consolidated docket, not a class.

The court distinguished *Ingraham v. Capital One Financial Corp.*, No. 24-cv-05985-TLT, 2026 WL 1759155 (N.D. Cal. June 16, 2026), where eleven vendors' technologies defeated predominance, on the ground that "the only technology at issue here is Meta's." Order at 6 n.3. That misses the point. Predominance turns on the unit at which the liability facts vary, whatever the number of vendors. Here that unit is the deployment. Each provider decided where to install the Pixel, could configure what it sent,

and wrote its own privacy notice. *Id.* at 5–7, 11–12. Those choices, not Meta's code, determine whether data was transmitted, whether its contents were protected health information, and whether the user consented to sharing it. The court concedes the unit when it defines the classes by a list of providers, *id.* at 3 & n.1, and describes the consent evidence as common only "to the clients of those Class Healthcare Providers," *id.* at 12 n.9.

The court's answer is that none of this is "truly individualized," because "case management and trial management approaches" will handle it. Order at 5, 7. Rule 23 does not require a trial plan. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005). But the evidence the order called common is "common to specific identifiable healthcare entities." Order at 6; *see id.* at 12. That means proving coverage, configuration, and consent provider by provider. That is a superiority finding offered where Rule 23(b)(3) requires a predominance finding, and a management plan that does not yet exist cannot substitute for one.

The order makes no showing of how that would work and concedes that the plaintiffs "will have to make choices." *Id.* at 7. A court that cannot say how thousands of provider-specific questions will reach a jury has not found that common questions predominate, only that it hopes they will.

### B. The district court set Meta's evidence aside and left the sorting for later.

The district court faulted Meta for failing to show that individualized issues affect a "significant number" of class members, then cited *Nolen* for that burden. Order at 9 (citing 2026 WL 2871735, at *12). *Nolen* was describing its own record, not announcing a test. There was "no evidence that any students, let alone a significant number," had signed the consent forms. 2026 WL 2871735, at *12. *Nolen* asks two questions, drawn from *Van v. LLR, Inc.*, 61 F.4th 1053, 1067–69 (9th Cir. 2023): (1) whether the defendant has "substantiate[d]" individualized defenses to at least some class members' claims, and if so, (2) whether litigating them "would overwhelm adjudication of the common questions." *Nolen*, 2026 WL 2871735, at *11.

*Nolen*'s record was empty. This one is not. Meta offered sworn declarations from listed providers that never used its tools. Order at 6–7. It pointed to the prescription-drug class representative's own visits to a drug website before she began using the drug, which the court agreed "would not be actionable." *Id.* at 9. That is substantiation under *Van*, where evidence as to 18 of 13,680 discounts sufficed because "there was no way to determine, without examining each," how many more were

affected. *Nolen*, 2026 WL 2871735, at *13. Here the court never asked whether this record could be sorted without examining each provider. It deferred the declarations to summary judgment, Order at 7, labeled Meta's other examples "de minimis," *id.* at 1, 9–10, and moved on. On proxy visits, the order faults Meta for showing nothing "through expert opinion or otherwise," Order at 9, but never discusses the expert opinion Meta offered on that subject, *id.* at 33.

The plan to sort it out later fails too. The order would let class members "self-identify" as patients who disclosed protected information "following an aggregate damage or restitution award." Order at 7. Self-identification worked in *Nolen* because the attested facts were binary and easily verified against the defendant's own database. 2026 WL 2871735, at *13–14. *Nolen* itself distinguished affidavits on "class membership" from those that "establish an element of liability." *Id.* at *14 & n.12. Here they are the same: the classes are defined by the facts that make Meta liable. Order at 3, 7.

This Court has also held that unnamed members of a damages class must offer proof of standing at summary judgment, not after an award. *Healy v. Milliman, Inc.*, 164 F.4th 701, 703, 708–09 (9th Cir. 2026). And even in *Nolen*, where claims could be verified, this Court recognized that

when "the amount of damages that a defendant will be ordered to pay in a final judgment depends on the number of class members who file claims," how membership is decided "will implicate the defendant's due process interests." 2026 WL 2871735, at *14. With $5,000 in statutory damages per violation under California's Invasion of Privacy Act, Cal. Penal Code § 637.2(a)(1), the headcount is the whole case.

After finding predominance satisfied on the record before it, *Nolen* ended its predominance analysis by noting that the defendant could move to decertify "[s]hould circumstances change or later evidence reveal obstacles to classwide adjudication." *Nolen*, 2026 WL 2871735, at *17. The order below cites that same passage as license to defer the questions on which its own predominance finding depends. Order at 6, 17 n.15.

Yet the 2003 amendments deleted the provision that a certification "may be conditional" for exactly this reason: a court "not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment. Rule 23(c)(1)(C) lets a court amend a class it has found to comply. Flexibility to fix a class later is not permission to certify one that has not been shown to work.

## II. INTERLOCUTORY REVIEW IS MOST LIKELY THE ONLY REVIEW THIS ORDER WILL RECEIVE.

If this Court does not review the order now, chances are good that no court ever will. First, the certification order itself explains why the deferred questions will never be reached. Rejecting Meta's superiority argument, the court observed that Meta's "legal bills for this case—even if limited to amounts spent on discovery regarding Meta's classification systems, data pipelines, and the related expert discovery—swamps any individual's statutory or actual damages claim." Order at 19. That is true of one claim. Multiply $5,000 across the classes, and the comparison reverses. That exposure is why this order will likely never be reviewed unless this Court grants the petition. Certification "may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense." *Microsoft Corp. v. Baker*, 582 U.S. 23, 29 (2017) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978)).

The Advisory Committee said as much when it wrote Rule 23(f). A certification order "may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability." Fed. R. Civ. P. 23 advisory committee's note to 1998 amendment.

That pressure is the price of a sound certification. Here it attaches to questions the court never answered. And an order that defers the predominance questions to summary judgment, in a case that will likely settle before summary judgment, defers them forever.

Second, the order rests on a legal ruling that will shape every analytics-technology case in this Circuit. Courts in the Northern District of California had long denied certification of wiretap and privacy classes because implied consent is "an intensely factual question" that turns on what each user saw and knew. Order at 13 (citation omitted). The order holds that those decisions "preceded" *Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024), and that after *Calhoun* "what one consumer understood . . . is not the question." Order at 14. Consent is now a single objective inquiry, resolved classwide or, at most, provider by provider. *Id.*; *id.* at 12 n.9. The order adds that "implied consent is not a defense to a contractual promise" at all. *Id.* at 31. But *Calhoun* was a summary-judgment decision about Google's own disclosures. Whether it also took individualized consent out of Rule 23 is a question of law this Court has not yet answered. Hundreds of pending cases turn on it. *See* Pet. 23.

Third, *Nolen* is new, and this order is among the first to apply it. *Nolen* involved one website, one theory of liability, one state's residents,

and a class definition that already excluded those who had consented by registering or donating. 2026 WL 2871735, at *4, *14. The order reads it as authority to certify four nationwide classes against a technology vendor for what thousands of third parties did with its tools, and to leave the sorting for later. If that reading stands, every district court in the Circuit will apply it before this Court can say whether it is right.

Nor is Meta the only company reading the order. Meta required partners to have "lawful rights" to the data they sent, warned developers it found sending sensitive data, and built systems designed to screen such data out. Order at 13 n.10, 15, 21, 35. Whether those measures worked is a question for another day. But no company that took those same measures can learn from this order what its exposure is, because the order deferred the findings that would answer it. A business can price a known risk. It cannot price one that depends on facts the certifying court left unresolved.

## CONCLUSION

And so, "[h]ere we are." Order at 19. The district court was candid about what it did. It identified the questions that determine whether this case can be tried as a class, and it answered each with a promise to decide later. Rule 23 does not accept that answer, and neither should this Court.

The petition should be granted.

November 18, 2026

Respectfully submitted,

/s/ Cory L. Andrews
Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
candrews@wlf.org

## CERTIFICATE OF COMPLIANCE

This brief contains 2,639 words, excluding the items exempted by Fed. R. App. P. 32(f). It does not exceed one-half the length permitted for the petition under Circuit Rules 5-2(b) and 32-3(2).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (6) because it was prepared in 14-point Century Schoolbook font.

/s/ Cory L. Andrews
CORY L. ANDREWS
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

November 18, 2026